UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ELVIS HOUSTON FIELDS,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | Civil Action No. 3:10-cv-0413<br>Judge Wiseman/Brown |

To: The Honorable Thomas Wiseman, Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), as provided under Title II and Title XVI of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Response. (Docket Entries 15, 17). The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 14). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **GRANTED in part** and the action be remanded for rehearing pursuant to 42 U.S.C. § 405(g).

### I. INTRODUCTION

Plaintiff first filed for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB") on April 8, 2005. His original alleged onset date was August 31, 1995, which was later amended to July 15, 1999. Plaintiff's claim was denied initially and on reconsideration. (Tr. 24,

1

21). He requested a hearing before the ALJ, which was held on October 17, 2007 before ALJ James A. Sparks. The ALJ issued an unfavorable decision on December 7, 2007. (Tr. 13-20).

In his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2002.
2. The claimant has not engaged in substantial gainful activity since July 15, 1999, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
3. The claimant has the following severe impairments: low back pain with radiculopathy, obstructive sleep apnea, headaches, asthma, and acid reflux (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work; stand/walk/sit for 6 hours each during an 8-hour workday. The claimant can frequently climb, balance, stoop, kneel, crouch, and crawl. He must avoid work around dust, fumes, and gases. His pain level is taken into account. He has mild mental limitations.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on October 14, 1967 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 1999 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-20).

The Appeals Council denied Plaintiff's request for review on April 5, 2010. (Tr. 2-4).

## II. REVIEW OF THE RECORD

Plaintiff was born on October 14, 1967. (Tr. 21). He has an eleventh-grade education. (Tr. 792). He has a work history of unskilled labor in factory, warehouse, construction, and automotive positions. (Tr. 192-99). He originally alleged an onset date of August 31, 1995, but he amended that date to July 15, 1999 at his hearing. (Tr. 792). Plaintiff claims he is disabled as a result of back/leg pain, short term memory loss, migraine headaches, breathing problems, allergies, stomach problems, and a sleeping disorder. (Tr. 88). He last worked on February 28, 2004, when he stopped working part-time in his father's automotive shop in exchange for room and board. (Tr. 88). For purposes of his disability determination, however, he last worked on July 15, 1999. (Tr. 89).

Plaintiff first injured his back at work in 1989 and has had low back pain since that time. (Tr. 606). In April 2002, Plaintiff was treated for pneumonia. (Tr. 237-46). Plaintiff was diagnosed with and treated for acute asthmatic bronchitis, acute bilateral maxillary sinusitis, acute laryngitis, and a headache in October 2002. (Tr. 232-32). Plaintiff was treated for allergies and asthma beginning in 2003 with Dr. Babe, then continuing with Dr. Carter in 2005. (Tr. 736-76, 612-24, 225-27). Plaintiff was also diagnosed with and treated for severe obstructive sleep apnea beginning in 2004. (Tr. 632-704). In 2007, Plaintiff was diagnosed with and treated for melanoma, but there has been no evidence of recurrent melanoma. (Tr. 257, 248-82).

Plaintiff sought treatment for lower back pain in 2005.[1] Dr. Keith Hill referred Plaintiff to Dr. Christopher Kauffman at Tennessee Orthopedics for an evaluation of Plaintiff's lumbar spine.

---
[1] Plaintiff's physician, Keith Hill, ordered an MRI of his right shoulder on January 30, 2004, but this does not appear to be related to his back pain. (Tr. 103).

3

(Tr. 283, 606). At the March 10, 2005 office visit, Dr. Kauffman noted that Plaintiff had an MRI "which has been read out as having spinal stenosis at L2-3, 3-4, and 4-5." (Tr. 284, 608). Dr. Kauffman disagreed with this reading, stating that it seems Plaintiff "has a single degenerative disk at 4-5 with some stenosis at this level." *Id.* at 284. Dr. Kauffman diagnosed Plaintiff with lumbar degenerative disk disease and lumbar stenosis and suggested Plaintiff should try epidural steroids before trying surgery. *Id.* He referred Plaintiff to Dr. Baker.

Plaintiff first visited Dr. T. Scott Baker on March 17, 2005. (Tr. 205). Dr. Baker diagnosed Plaintiff with lumbar spondylosis and lumbar radiculopathy right and performed a lumbar epidural steroid injection. *Id.* Plaintiff subsequently received a similar steroid injection on March 31, 2005. (Tr. 202). At a follow-up visit with Dr. Kauffman on April 21, 2005, Plaintiff informed Dr. Kauffman the injections made the pain worse. Dr. Kauffman did not recommend surgery and instead suggested Plaintiff continue with his current non-steroidal anti-inflammatory medications and other pain medications as needed. (Tr. 282). Plaintiff had an additional MRI on March 31, 2006, which showed mild bulging annulus at L3-L4, L4-L5, and L5-S1 with slight effacement of the dural sac. (Tr. 235). There was no spinal stenosis or focal disc herniation. *Id.* He had a third MRI on January 18, 2007, which was negative except for spondylosis L4-L5 and L3-L4. (Tr. 300).

Reba Fields, Plaintiff's mother, completed a function report on Plaintiff's behalf on May 3, 2005. (Tr. 129-35). She stated that she helps Plaintiff every day in caring for his children and completing housework. (Tr. 129). He is able to prepare simple meals and do some housework and shopping, but he needs help. (Tr. 130-31). He also has some problems with his hygiene. (Tr. 130).

Plaintiff completed a function report on May 5, 2005. (Tr. 150-57). He stated that he was able to get his two children up and ready for school, but that he needed help with their care. (Tr. 150-51). He stated that he hurts all the time, and he has some problems cleaning himself in the shower. (Tr. 151). He is able to prepare simple meals, such as sandwiches, frozen dinners, and canned foods, but he is unable to stand up for very long. (Tr. 152). His older son helps him with laundry and some cleaning, and his parents help with additional cleaning and housework. *Id.* Plaintiff is able to drive and can shop for food or clothes approximately twice a month, but he needs to sit down to rest frequently. (Tr. 153). He spends the day watching television and, when the weather is nice, sitting on the porch swing until his back hurts. (Tr. 154). He stated he is able to walk about 60 to 70 feet before needing to rest for 5 to 10 minutes. (Tr. 155). His back pain affects lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. *Id.*

Plaintiff completed a pain questionnaire on May 7, 2005. (Tr. 143-46). He stated that he treats his pain with Hydrocodone, twice a day as needed and a Duragesic pain patch every 72 hours. (Tr. 143).[2] He had used epidural steroid injections, but he discontinued the use after two injections because they increased the pain. *Id.* He stated that his pain is relieved somewhat by medication, but not completely. *Id.*

Dr. Roy Johnson examined Plaintiff at the request of the SSA on August 1, 2005. (Tr. 592-95). Dr. Johnson opined that Plaintiff should avoid repetitive lifting more than 10 pounds, may stand up to four hours during an 8-hour shift, and had no restrictions on sitting. (Tr. 595).

Dr. Carol Lemeh conducted a review of Plaintiff's medical file and issued a report on

---

[2] Plaintiff also takes Topamax and Orudis for his migraine pain. (Tr. 145).

August 18, 2005. (Tr. 566-73). Dr. Lemeh concluded Plaintiff could occasionally lift and/or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and/or walk for a total of about 6 hours in an 8-hour work day, could sit for a total of about 6 hours in an 8-hour work day, had no limitations on pulling or pushing, and could frequently climb, balance, stoop, kneel, crouch, and crawl. (Tr. 567-68). Dr. Lemeh noted that Plaintiff's back pain was treated conservatively and that he was partially credible regarding pain, in part because he was able to care for his children, care for himself to some extent, prepare light meals, do some laundry, drive, and do some shopping. (Tr. 573). Dr. Lemeh believed Dr. Johnson's recommendations were too restrictive and not supported by the medical record. *Id.*

On December 2, 2005, Dr. Matthew Kingsbauer, Plaintiff's treating physician, provided a letter stating Plaintiff could not serve on jury duty. (Tr. 214). He noted that Plaintiff had "a history of back problems" and was "not able to sit in a chair for periods over 20 minutes at a time," as "[p]rolonged sitting causes the patient to experience severe back pain." *Id.*

Dr. Michael Cox completed a medical source statement for Plaintiff on February 11, 2006, based on an office visit on February 8. (Tr. 430-34). Dr. Cox opined that Plaintiff had lifting/carrying limitations and could occasionally or frequently lift and/or carry less than 10 pounds. (Tr. 430). Dr. Cox believed Plaintiff had standing and sitting limitations and could stand and/or walk at least two hours in an 8-hour work day and could sit less than 6 hours in an 8-hour work day. *Id.* According to Dr. Cox, Plaintiff would be required to alternate sitting and standing every 30 minutes. (Tr. 431). He noted Plaintiff frequently experienced pain severe enough to interfere with attention and concentration, and Plaintiff would need to take unscheduled breaks twice during an 8-hour work day. *Id.* Plaintiff would be expected to be

6

absent about four times a month as a result of his impairments. *Id.*

At his October 17, 2007 hearing, Plaintiff testified that he is taking Percocet and Hydrocodone, but they do not relieve his pain. (Tr. 793). He can walk a hundred feet at the most before his legs start to give out, and he can stand about ten minutes. *Id.* He cannot bend, but he can squat some. *Id.* He can lift about a gallon of milk, and he is in pain sitting down. (Tr. 794). He rates his pain at about a 7 out of 10 after taking pain medication. (Tr. 795). He sometimes needs help dressing, and he is able to make simple meals like sandwiches. *Id.* Plaintiff also testified that he has a headache every morning when he wakes up, and he has to lie down in a dark area at least three days a week. (Tr. 798). He stated that he has to constantly change positions to relieve his back pain. (Tr. 799).

The ALJ also examined Dr. Flynn, the SSA vocational expert at the October 17, 2007 hearing. (Tr. 802-04). The ALJ asked Dr. Flynn to assume a 40-year-old person with the same education and work experience as Plaintiff who can walk, sit, and stand 6 hours total in an 8-hour work day with normal breaks; can occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds; could frequently climb, balance, stoop, kneel, crouch, and crawl; and with no working around dust, fumes, or gases. (Tr. 803). Dr. Flynn testified that a person with these restrictions could perform light work, which would include office clerks, receptionists, and similar positions. (Tr. 803-04). The ALJ asked whether, if Plaintiff's testimony were given full credibility, he would be able to perform the light duty jobs, and Dr. Flynn said he could not. (Tr. 804). Plaintiff's attorney asked Dr. Flynn to assume Plaintiff was restricted to lifting less than ten pounds either occasionally or frequently; standing or walking two hours in an 8-hour work day; able to push less than ten pounds with the lower extremity frequently; with pain severe enough to

interfere with his attention and concentration; with at least two unscheduled breaks per day; and needing to miss work four times a month. *Id.* Dr. Flynn testified Plaintiff would not be able to perform the light duty work described. *Id.*

### III. CONCLUSIONS OF LAW

A.      Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6thCir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.      Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

8

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B).

C.  Plaintiff's Statement of Error

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

The Plaintiff identifies the following two errors in the ALJ's decision:

1. The ALJ erred in rejecting the opinion of Dr. Michael Cox, Plaintiff's consultative doctor, and Dr. Roy Johnson, the consultative doctor for SSA. The ALJ also gave insufficient reason for rejecting the sitting restrictions given by Dr. Kingsbauer, Plaintiff's treating doctor.
2. The ALJ erred in rejecting Plaintiff's statements concerning the intensity, persistence and limiting effects of his pain.

These alleged errors are addressed below.

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). However, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

While the ALJ is not bound by the opinions of Plaintiff's treating physicians, the ALJ is required to set forth some sufficient basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In discrediting the opinion of a treating source, the ALJ must consider the nature and extent of the treatment relationship, the length of the treatment relationship and the frequency of examinations, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the specialization of the treating source, and any other factors which tend to support or to contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

Here, the ALJ rejected the opinions of Dr. Cox, a treating physician who provided a

consulting opinion after an examination of Plaintiff, Dr. Johnson, who also provided a consulting opinion after examination, and Dr. Kingsbauer, Plaintiff's treating physician.[4] The ALJ instead relied on the opinion of Dr. Lemeh, who reviewed Plaintiff's medical records but did not examine Plaintiff. The ALJ believed the three examining physicians' opinions were "overly restrictive and based for the most part on the subjective complaints of the claimant rather than on the objective medical evidence." (Tr. 16). The Magistrate Judge believes this is clear error. There was no conflicting objective medical evidence in the record, and only Dr. Lemeh's opinion contradicted the opinions of Dr. Cox, Dr. Johnson, and Dr. Kingsbauer. In fact, the examining physicians' opinions were generally consistent with each other and with Plaintiff's testimony.

The ALJ also found that Plaintiff lacked credibility, because he "cares for personal needs; watches television; plays with the dogs; and walks around outside." (Tr. 19). An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Further, discounting the credibility of a claimant is appropriate where the ALJ finds contradictions from medical reports, claimant's other testimony, and other evidence. *Id*. Like any other factual finding, however, an ALJ's adverse credibility finding must be supported by substantial evidence. *Doud v. Commissioner*, 314 F. Supp. 2d 671, 678-79 (E.D. Mich. 2003). Here, Plaintiff's complaints and alleged symptoms were consistent with the opinions offered by all

---

[4] The Magistrate Judge agrees with the ALJ's opinion that Dr. Kingsbauer's letter, seeking to have Plaintiff excused from jury duty, is not necessarily probative of Plaintiff's ability to work. It stands to reason, however, that Plaintiff's inability to serve on a jury due to an alleged disability is persuasive support that Plaintiff cannot do medium work, as the ALJ concluded.

11

his treating physicians. There is no evidence from the medical records that contradicts Plaintiff's alleged level of pain. The Magistrate Judge believes the ALJ did not have substantial evidence for his adverse credibility finding, and this finding is error.

Because the Magistrate Judge believes the ALJ committed two legal errors, the action should be remanded for rehearing consistent with this Report and Recommendation. *See* 42 U.S.C. § 405(g). The Magistrate Judge does not believe the record adequately establishes Plaintiff's entitlement to benefits and, therefore, declines to recommend an award of benefits.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for judgment be **GRANTED in part** and the action be remanded for rehearing pursuant to 42 U.S.C. § 405(g).

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 13th day of October, 2010.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge